UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEKIA COLEMAN,

                Plaintiff,

            -v-                    5:24-CV-1240

INTERNATIONAL UNION OF
PAINTERS & ALLIED TRADES,
DISTRICT COUNCIL 4,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:             OF COUNSEL:

LEKIA COLEMAN
Plaintiff, *pro se*
107 Mitchell Avenue
Syracuse, NY 13207

LIPSITZ GREEN SCIME      ROBERT L. BOREANAZ, ESQ.
    CAMBRIA LLP          ANTHONY FARACO, JR., ESQ.
Attorneys for Defendant
42 Delaware Avenue, Suite 120
Buffalo, NY 14202

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On October 9, 2024, plaintiff Lekia Coleman ("plaintiff" or "Coleman")
filed a complaint asserting claims for racial discrimination under Title VII of
the Civil Rights Act of 1964 ("Title VII") and the New York State Human
Rights Law ("NYSHRL") against his union, the International Union of
Painters & Allied Trade District Council 4 ("defendant" or "DC4").  Dkt. No.
1.  Coleman also moved to proceed *in forma pauperis* ("IFP Application").
Dkt. No. 2.

On December 30, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks
granted plaintiff's IFP application and conducted an initial review of the
pleadings pursuant to 28 U.S.C. § 1915(e).  Dkt. No. 5.  Judge Dancks found
that plaintiff's complaint sufficiently stated claims for racial discrimination
to survive initial review.  Dkt. No. 5.

On March 4, 2025, defendant moved pursuant to Federal Rule of Civil
Procedure ("Rule") 12(f) to strike two documents from plaintiff's complaint:
(1) a position paper submitted by defendant to the EEOC dated April 29,
2022 ("Defendant's Position Paper"); and (2) a letter written by Legal
Services of Central New York to the EEOC on plaintiff's behalf dated July 14,

2024 in response to Defendant's position paper (the "LSCNY Letter").  Def's. Mem., Dkt. No. 16–1, *see also* Dkt. No. 1–1 at 8–26.[1]

Defendant argues that these two documents are immaterial, related to a different administrative matter, prejudicial to defendant, and redundant. Def's. Mem at 4.  Plaintiff has not filed an opposition to this motion and the deadline to do so has passed.  *See generally* Dkt. No. 16.

The motion has been fully briefed and will be considered on the basis of the available submissions without oral argument.  Dkt. No. 16.

## II.  BACKGROUND

Plaintiff has filed a handwritten form discrimination complaint, marking by hand that he is bringing claims against defendant under Title VII and the Human Rights Law for, *inter alia*, disparate treatment and retaliation.  Dkt. No. 1.  But plaintiff's complaint gives scant details about the underlying events that took place: plaintiff indicates that his association with the union and the discrimination he complains of here both started in 2014.  *Id.*

However, plaintiff's EEOC charge sheds far more light on the factual background of this action.  Dkt. No. 1–1 at 1–2.  In 2017, plaintiff, a Black man, alleges he began work as a bridge painting apprentice for Erie Painting & Maintenance ("EPM").  *Id.* at 1.  Upon completing his apprenticeship at

---

[1]  Pagination corresponds to CM/ECF headers.

EPM, plaintiff was promoted to journeyman in 2020. *Id.* At this same time, DC4 was referring plaintiff for work on various jobs, including certain projects with EPM. *Id.* In May 2021, plaintiff was informed by a project manager working for EPC that he was being assigned to work on a project in Hornell, New York (the "Hornell Project"). However, plaintiff was also told that he was being assigned to satisfy a quota for black employees to successfully bid on the project.[2] *Id.* Plaintiff agreed to work on the Hornell project, even though it was two hours from his home in Syracuse. *Id.*

On June 2, 2021, Coleman first arrived on the Hornell project, expecting to begin work as a blaster. Dkt. No. 1–1 at 1. Upon arriving, however, an on-site project foreman informed plaintiff that blasting work was already promised to two younger, Caucasian employees. *Id.* Instead, plaintiff was directed to performing gritting work, which required more labor and less skill. *Id.*

On June 7, 2021, plaintiff alleges he contacted a business agent for defendant responsible for referring him to positions on projects. Dkt. No. 1–1 at 1. Coleman alleges he complained to this business agent that he believed he was treated differently on the Hornell Project due to his race. *Id.* But

---

[2] Plaintiff erroneously refers to this as Hormel, New York in his EEOC charge. Dkt. No. 1–1 at 1.

plaintiff claims this business agent failed to meaningfully investigate his complaint. *Id.* at 2.

Coleman then proceeded to contact "the head of [his] local union district" to lodge the same complaint. Dkt. No. 1–1 at 2. Plaintiff claims this representative replied that Coleman was making $60,000 per year and needed to do "whatever work [he] was told." *Id.* Plaintiff alleges he further escalated him complaint by contacting an "international union leader located in Washington, D.C." *Id.* Coleman alleges this union leader informed him they would commence an investigation into his racial discrimination claims, but that this too never yielded a meaningful investigation. *Id.* Rather, several months later, plaintiff alleges being informed that this union leader determined that no discrimination occurred. *Id.*

Plaintiff alleges defendant retaliated against him for lodging a racial discrimination complaint regarding his work assignment on the Hornell Project. Dkt. No. 1–1 at 2. Specifically, Coleman was informed by a project manager for EPM that he would no longer be assigned to a project in Syracuse he had previously been promised. *Id.* Plaintiff also alleges a business agent working for defendant told "employees" that he "was starting a race thing." [3] *Id.* Coleman alleges same business agent also stated that

---

[3] But it is unclear which employees were told this and whether this was limited to EPM employees or disclosed more broadly.

plaintiff was not getting assigned to another job "because there was nothing available" and that defendant continues to refuse to refer him to available jobs within "his local." [4]  Plaintiff contends that this refusal amounts to a denial of union membership, that defendant has subjected him to differing terms and conditions, and that they failed to meaningfully investigate his complaint.  Plaintiff also asserts that defendant retaliated against him for alleging differential treatment on the basis of his race on the Hornell project in violation of Title VII.

Plaintiff filed a complaint with the EEOC on March 29, 2022.  Dkt. No. 1–1 at 1–3.  On April 29, 2022, DC4 submitted a position paper to the EEOC addressing the allegations contained in plaintiff's charge.  Defendant's Position Paper, Dkt. No. 1–1 at 13–26.  On July 14, 2023, Legal Services of Central New York drafted a letter on plaintiff's behalf responding to this position paper.[5]  LSCNY Letter, Dkt. No. 1 at 8–12.  On July 11, 2024, Coleman received a Right to Sue Letter from the EEOC setting forth that they would not proceed further with their investigation of plaintiff's claims

---

[4] Presumably, this means plaintiff was not being referred jobs from his own local union, i.e., the defendant.

[5] Curiously, in defendant's motion to strike, they argue that the LSCNY Letter was submitted late on July 14, 2024, which was three days *after* the EEOC issued their Right to Sue Letter on July 11, 2024. *See* Def's. Mem. at 2.  While it is unclear what defendant's point was in raising this fact, it is in error.  A review of the LSCNY Letter makes clear it was dated July 14, 2023, almost one year before the issuance of the Right to Sue Letter. LSCNY Letter, Dkt. No.1–1 at 8–12.

and informing him of his right to bring suit within ninety (90) days.  *Id*. at 4–7.

### III.  <u>LEGAL STANDARD</u>

Rule 12(f) sets forth that "[t]he court may strike from a pleading an insufficient defense <u>or</u> any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  A court is permitted to strike material from the pleadings either "on its own" or "on motion made by a party."  *Id.*

However, the Second Circuit has further clarified this rule.  Motions to strike material *entirely* "on the ground that the matter is impertinent and immaterial" are "disfavored", *but* when the material is *also* "scandalous," no such presumption applies. *Brown v. Maxwell*, 929 F.3d 41, 52 n.42 (2d Cir. 2019) (emphasis added) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) ("Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy *or* may cause the objecting party prejudice."); *Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) ("Motions to strike are not generally favored, except in relation to scandalous matters."); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 617–18 (1st Cir. 1988) (categorizing as scandalous "matter which impugned the character of defendants"). "Thus the

courts should not tamper with the pleadings unless there is a strong reason for doing so." *Lipsky*, 551 F.2d at 893.

## IV.  DISCUSSION

As noted *supra*, defendant now moves to strike two documents from plaintiff's complaint: (1) the LSCNY Letter and (2) Defendant's Position Paper.  Def's Mem. at 1.

### A.  LSCNY Letter

Defendant moves to strike the LSCNY Letter to the EEOC, which accompanies plaintiff's complaint, on the basis that the document is immaterial, related to a different administrative matter, prejudicial to defendant, and redundant.  Def's Mem. at 4.  As mentioned *supra*, the LSCNY Letter appears to have been submitted in response to Defendant's Position Paper, Dkt. No. 1–1 at 13–26, which defendant submitted to the EEOC.  *Id.* at 8–12.

Courts should not tamper with pleadings absent a strong reason to do so. *Lipsky*, 551 F.2d at 893.  Further, motions to strike material from pleadings solely because they are impertinent and immaterial are generally disfavored in the Second Circuit.  *Brown*, 929 F.3d at 52 n.42.  But this general rule does not apply where pleadings are also deemed to be scandalous.  *See id.*; *see also Wine Markets Int'l, Inc.*, 177 F.R.D. at 133.  Pleadings are deemed scandalous where the matter at issue bears no *possible* relation to the controversy or *may*

cause the objecting party prejudice.  *Talbot*, F.2d at 664 (emphasis added).

Pleadings are also held to be scandalous where they impugn a defendant's

character.  *Alvarado-Morales*, 843 F.2d at 617–18.

Taking defendants arguments in turn, defendant first argues that the

LSCNY Letter is immaterial.  Def's. Mem. at 2–3.  Namely, defendant claims

that the LSCNY Letter is immaterial because its primary purpose is to

reference other litigation rather than the present action.  Def's. Mem. at 2.

Defendant further argues the LSCNY Letter is either based upon, or relies in

part on, pleadings or documents from a separate action that is either

dismissed, settled, or unresolved, and that pleadings referencing proceedings

which do not adjudicate underlying issues in the present action should be

stricken.  *Id.* at 3.  Defendant claims that the LSCNY Letter references

altogether different administrative proceedings that were not properly

adjudicated, thus rendering it immaterial in this action.  *Id.*

But defendant fails to indicate what other litigation is being referenced by

the LSCNY Letter to render it immaterial.  To the contrary, the facts

discussed in this letter appear to be highly, if not entirely, related to the

matter at issue.  Further, even if this letter were to be found immaterial,

striking pleadings solely on that basis is disfavored in this Circuit.  *Brown*,

929 F.3d at 52, n. 42.

Defendant next argues that the LSCNY letter should be dismissed because it is unfairly prejudicial to defendant and any relevance it may offer is outweighed by its prejudicial effects. Def's. Mem. at 4. However, aside from arguing that it is prejudicial to allow documents related to the EEOC administrative process to accompany plaintiff's complaint, defendant has made no arguments or offered any facts to suggest how, specifically, the LSCNY Letter is prejudicial to defendant.

Lastly, defendant argues the LSCNY Letter is redundant and that all repetition of allegations in the EEOC complaint itself should be stricken in the interest of preventing clutter on the record and preserving judicial resources. Def's Mem. at 5.

Upon review, the Court finds defendant's arguments to strike the LSCNY Letter to be particularly unavailing. Defendant has failed to provide the Court with any basis to find that the LSCNY Letter either bears no possible relation to the matter at issue or impugns the defendant's character. *Talbot*, F.2d at 664. Accordingly, defendant's motion to strike the LSCNY will be denied.

## B.    **Defendant's Position Paper**

Defendant also moves to strike a position paper that their inside counsel submitted to the EEOC, Dkt. No. 1–1 at 13–26, on the basis that it is also immaterial, related to a different administrative matter, prejudicial to the

defendant, and redundant.  But here, unlike with the LSCNY letter, DC4 has not offered *any* specifics about why this letter is improper.  *See generally* Def's Mem.  Therefore, given that the LSCNY Letter, for which defendant has made *any* let alone *some* more fulsome arguments, will not be stricken, this request shall also be denied for the same reasons described *supra.*

Therefore, it is

ORDERED that

1.  Defendant's motion to strike (Dkt. No. 16) is DENIED.

The Clerk of the Court is directed to terminate the pending motion.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  May 21, 2025
        Utica, New York.